USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __10/21/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

        -against-

KAHEEM PALMER,

                              Defendant.

No. 7:24-CR-00067-NSR-2
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Kaheem Palmer ("Palmer" or "Defendant") is charged with (i) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (ii) Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; and (iii) brandishing a firearm in furtherance of a crime of violence, namely, Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii), and 2. A jury trial is set to begin on November 3, 2025.

Before the Court are the Parties' motions in anticipation for trial. Defendant filed motions *in limine* moving to: (1) preclude lay opinion testimony by law enforcement; (2) preclude law enforcement officer testimony regarding video footage received in evidence; (3) exclude as trial evidence the Government's summary chart identified as "FBI Cellular Analysis Survey Team – Historical Mobile Device Location Analysis"; and (4) exclude as trial evidence the Government's surveillance video compilation produced at USAO_005058, as well as for (5) an order directing the Government to produce unredacted versions of witness statements, law enforcement reports, and other documents intended to be introduced at trial. ("Def. Mot.", ECF No. 76.) The Government submitted an opposition to each of Defendant's motions. ("Gov't Opp.", ECF No. 78.)

The Government's motions *in limine* seek pretrial rulings to: (1) admit statements by the

Defendant and his co-conspirator, as well as statements made by the victims, including in the form of a recording of a 911 call; (2) preclude the defense from cross-examining a Government witness regarding a prior criminal conviction; (3) allow the Government to present voluminous evidence through a summary witness; (4) allow self-authentication of certain business records and phone extractions; and (5) exclude evidence of Defendant's personal circumstances, good conduct, and potential punishment. ("Gov't Mot.", ECF No. 77.) Defendant filed an opposition ("Def. Opp.", ECF No. 79) to the Government's motion and the Government filed a reply ("Gov't Reply", ECF No. 80) in further support of its motion.

For the following reasons, the Parties' motions are GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are drawn from the January 22, 2024 Complaint ("Compl.", ECF No. 1), the February 5, 2024 Indictment (ECF No. 10), and the Parties' submissions.

On the late evening of December 4, 2023, Defendant Kaheem Palmer, along with two co-defendants, traveled to a residence in the vicinity of South Clark Street in Newburgh, New York ("the Residence") to rob an individual ("Victim-1"). (Compl. ¶ 5; Gov't Mot. at 1.)

Over the course of the robbery, Defendant brandished a firearm, pistol-whipped Victim-1 and another individual at the Residence ("Victim-2"), handcuffed Victim-1, tied up Victim-2's feet, and covered both victims' heads with fabric materials. (Compl. ¶ 6(c); Gov't Mot. at 4.) Palmer and one of his co-defendants ransacked the Residence, demanded to know from Victim-1 where the safe and money were, and threatened to kill Victim-1 and Victim-2. (Compl. ¶¶ 6(e)-(f); Gov't Mot. at 4.)  Palmer and his co-defendant ultimately took $1,000 from Victim-1's pocket and $1,600 from Victim-2's pocket. (Compl. ¶¶ 6(e), 7(h); Gov't Mot. at 4.) Palmer and his co-defendant also

tried to unlock Victim-2's phone, but Victim-2 explained that his phone was being tracked by immigration authorities. (Compl. ¶ 7(d); Gov't Mot. at 4.)

Before leaving the Residence, Palmer and his co-defendant removed Victim-1's handcuffs and the fabric covering his head, bound his arms and taped his mouth shut with duct tape, and tied his legs with a belt. (Compl. ¶ 6(h); Gov't Mot. at 4-5.) Palmer and his co-defendant also tied Victim-2's legs. (Gov't Mot. at 5.) Palmer and his co-defendant then exited the Residence and left the scene in a vehicle parked nearby. (*Id.*)

After Palmer and his co-defendant left the Residence, Victim-1 and Victim-2 unbound themselves and called 911 using Victim-2's cellphone to report the robbery. (Compl. ¶ 6(i); Gov't Mot. at 6.) In addition to the stolen cash, Victim-1 reported to the law enforcement that responded to the Residence that Palmer and his co-defendant had also stolen marijuana, a watch, a blue jug filled with coins, a plastic food container filled with coins, a gallon bottle filled with approximately $2,000 in coins, and identification documents, including Victim 1's passport, birth certificate, and social security card. (Compl. ¶ 6(j); Gov't Mot. at 6.) Victim-1 and Victim-2 also reported that both Palmer and his co-defendant had guns. (Compl. ¶¶ 6(k), 7(l).)

Law enforcement authorities identified Palmer and his co-defendant based on, *inter alia*, a review of: (1) video footage from the evening of December 4, 2023, collected from surveillance cameras owned by residents near the Residence; (2) video footage from the early morning hours of December 5, 2023, collected from a residential building in Mount Vernon, New York, where the vehicle used by Palmer and his co-defendant was observed; (3) information provided by a telecommunications provider associated with a particular cellphone number; (4) content from a particular social media account; (5) records produced by an email service provider for a particular email address; and (6) cellphone location data. (Compl. ¶¶ 8-16, 22-26.) Based on a review of

cellphone contents, law enforcement authorities learned that Palmer and his co-defendant had planned the robbery earlier that day, including via text messages they sent each other identifying the target Residence and discussing the time to commit the robbery. (Gov't Mot. at 2-3; Compl. ¶ 17.) In the days that followed the robbery, Palmer and his co-defendant also discussed via text message how to sell the stolen marijuana. (Gov't Mot. at 8; Compl. ¶¶ 20-21.)

In January 2024, law enforcement searched the home and vehicle of Palmer's co-defendant and recovered, among other items, several bags of marijuana, two firearms, and Victim-1's identification documents. (Gov't Mot. at 8.) On February 5, 2024, Palmer and his two co-defendants were indicted. (ECF No. 10.) Palmer was charged with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and brandishing a firearm in furtherance of a crime of violence, namely, Hobbs Act robbery. At a pretrial conference on February 13, 2025, the Court granted the Parties leave to file motions *in limine* addressed herein.

## LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted). "Because a ruling on a motion in limine is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09-CR-1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

I.    **Defendant Kaheem Palmer's Motions *In Limine***

A.    *Preclusion of Law Enforcement Lay Opinion Testimony and Testimony About Video Surveillance in Evidence*[1]

Defendant moves to preclude law enforcement opinion testimony generally, including about video surveillance in evidence. Rule 701 of the Federal Rules of Evidence allows lay opinion testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. *See also United States v. Yannotti*, 541 F. 3d 112, 125 (2d Cir. 2008) ("A rational perception is one involving first-

---

[1] The Court will address Defendant's first and second motions *in limine* together because both motions are governed by Federal Rule of Evidence 701 and because the only lay opinion testimony identified in Defendant's first motion *in limine* is opinion "as to the identity and actions of individuals seen on the surveillance footage," which is also the subject of defendant's second motion *in limine*. (Def. Mot. at 1.)

hand knowledge or observation.") (internal quotations omitted). "Where the jury is 'in as good a position as the witness to draw the inference' to which the opinion relates, the opinion is not helpful and should not be admitted." *United States v. Arroyo*, 600 F. App'x 11, 15 (2d Cir. 2015) (quoting *United States v. Rea,* 958 F.2d 1206, 1216 (2d Cir.1992)). "By contrast, when an opinion is the result of factors not otherwise possessed by or communicated to the jury, the opinion testimony is likely to be helpful." *Id.*

Defendant argues that the Government is attempting to introduce law enforcement officers as lay witnesses when, in fact, the opinions or summary testimony those officers would offer would be based on their "specialized" knowledge rather than on their own perceptions. (Def. Mot. at 5–6.) Defendant further contends that any opinion testimony from law enforcement officers about the surveillance videos in evidence "would not be based solely on the officer's personal perception" because they "did not witness the events shown in the surveillance videos firsthand," and such testimony instead would be based "on the totality of information gathered during the course of the investigation." (*Id.* at 7–8.) The Government responds that it "intends to elicit testimony from witnesses, including law enforcement officers, identifying the defendant as well as other individuals, places, vehicles, and objects in surveillance video" and that "[s]uch evidence will be introduced after a proper foundation is laid that establishes that the witness is testifying from his or her own personal experience, familiarity, or observation." (Gov't Opp. at 3.)

With respect to the proposed opinion testimony identifying Defendant in surveillance video, it is unclear to the Court how such testimony from law enforcement officers would be based on their "own personal experience, familiarity, or observation" if their familiarity with Defendant does not extend beyond the very robbery for which Defendant is on trial and for which the officers are testifying. The Government cites Second Circuit caselaw permitting law enforcement officers

to identify a defendant in a video under Federal Rule of Evidence 701. However, in each of those cases, the officers' testimony was grounded in *prior* interactions with the defendant that provided a legitimate basis for identification founded on first-hand knowledge or observation. *See e.g.*, *United States v. Walker*, 974 F. 3d 193, 2105 (2d Cir. 2020) (permitting testimony from probation officer identifying the defendant in surveillance video where the officer "had spent many hours with [the defendant] leading up to the time of the robbery and had the opportunity to observe physical traits such as his gait, which were on display in the surveillance video but not at trial"); *United States v. Kelly*, 2024 WL 182409, at *2-3 (S.D.N.Y. Jan. 17, 2024) (permitting an officer's identification testimony based on a still image from surveillance footage where, approximately one month before the robbery at issue, the officer had arrested the defendant for another robbery and spent about twenty-five minutes with him at the precinct); *United States v. Woodford*, 2019 WL 5457854, at *3 (E.D.N.Y. Oct. 13, 2019) (allowing officers to identify the defendant in surveillance video where they had become familiar with him over the preceding summer, during which the defendant "frequently spent time in the [officers'] precinct with members of a gang," and their identification was thus "based on their prior familiarity with defendant.") (internal quotations omitted). The Government also cites *United States v. Arroyo* as another Second Circuit case in which the court upheld the admission of identification testimony by a building superintendent. 600 F. App'x 11 (2d Cir. 2015). However, the superintendent in that case had had "several prior encounters" with the defendant, and his identification was "based on factors that the jury did not possess," including his "familiarity with [the defendant's] manner of dress, gait, and demeanor." *Id.* at 15.

By contrast, here the Government has not explained how the law enforcement officers—whose familiarity with the Defendant seems to arise only from their investigation of the charged

offense—could offer an opinion on identification based on anything other than their viewing of the same surveillance footage available to the jury. Where, as here, the jury will have the opportunity to review and interpret the videos itself, the Government fails to show how such opinion testimony would aid, rather than usurp, the jury's role in drawing inferences from the evidence. See *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When a witness has not identified the objective bases for his opinion, the proffered opinion ... fails completely to meet the requirements of Rule 701, ... [and] does not help the jury but only tells it in conclusory fashion what it should find.").

Defendant also seeks a blanket exclusion of all law enforcement lay opinion testimony. Courts remain divided on the permissible scope of such testimony. The Second Circuit has taken a more restrictive view, "limit[ing] admissible lay opinion by more narrowly interpreting the definition of first-hand knowledge and helpfulness," and requiring "a substantial personal relationship to the event in question, such as through observation or participation." Kim Channick, *You Must Be This Qualified to Offer an Opinion: Permitting Law Enforcement Officers to Testify as Laypersons Under Federal Rule of Evidence 701*, 81 Fordham L. Rev. 3439, 3465 (2013). For example, in the leading Second Circuit case, *United States v. Garcia*, the court held inadmissible a DEA agent's opinion testimony because it "drew on the total information developed by all officials who participated in the investigation," was "not limited to his personal perceptions," and was unhelpful under Rule 701(b) because it merely summarized the admitted evidence. 413 F.3d 201, 210–14 (2d Cir. 2005).

At this stage, it remains unclear whether the Government can lay the proper foundation to demonstrate that the law enforcement officers have familiarity with the Defendant beyond the criminal case before this Court for which Defendant is on trial. Accordingly, the Court

RESERVES DECISION on Defendant's request to broadly preclude all law enforcement lay opinion testimony, including Defendant's request to preclude law enforcement opinion testimony about video surveillance in evidence.

### B.    Exclusion as Trial Evidence of the Government's Summary Chart re: Cellular Analysis

Defendant moves to exclude, as trial evidence, a summary chart titled "FBI Cellular Analysis Survey Team – Historical Mobile Device Location Analysis." (Def. Mot. at 10.) Defendant argues that the summary chart, which the Government refers to as an expert report, contains improper bolstering because it bears FBI shields on multiple pages and includes language stating that the chart is the property of the FBI's Cellular Analysis Survey Team. (*Id.* at 11.) The Government represents that it has agreed to remove the FBI shields and the disputed language from the expert report and that, with those modifications, Defendant has agreed to withdraw his objections to the report, without waiving his right to object to its admission at trial. Accordingly, the Court DENIES AS MOOT Defendant's motion *in limine* to exclude the summary chart and directs the Government to remove the FBI shields and the language identifying the chart as property of the FBI before offering it as evidence at trial.

### C.    Exclusion as Trial Evidence of the Government's Surveillance Video Compilation

Defendant moves to exclude, as trial evidence, the Government's surveillance video compilation, submitted in discovery as "USAO_005058." (Def. Mot. at 12.) Federal Rule of Evidence 1006 provides that "[t]he contents of voluminous … recordings … which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. "A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized and must be based upon and fairly

represent competent evidence already before the Court." *United States v. Neumann*, No. 21-CR-439-01 (NSR), 2023 WL 8700974, at *7 (S.D.N.Y. Dec. 14, 2023) (alterations omitted) (quoting *Fagiola v. Nat'l Gypsum Co. ACS, Inc.*, 906 F.2d 53, 57 (2d Cir. 1990)). The Second Circuit has "regularly affirmed" the use of summary exhibits "to draw the jurors' attention to particular evidence culled from a voluminous set of records." *United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003); *see also United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010); *United States v. Casamento*, 887 F.2d 1141, 1149–50 (2d Cir. 1989); *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988); *United States v. Baccollo*, 725 F.2d 170, 173 (2d Cir. 1983).

Defendant argues that the compilation—"an approximately 23-minute-long video that compiles portions of unedited video footage from approximately five different cameras in the vicinity of the Residence on or about December 5, 2024" (Gov't Opp. at 6)—is unduly prejudicial, cumulative of the Government's anticipated evidence, and implicitly suggests that the individuals depicted in the clips are the Defendant and his co-defendant. (Def. Mot. at 13.) However, here, the Government offers the video compilation, which was "compiled from more than 100 minutes of video surveillance footage," to "avoid the waste of jury and Court time that would arise from toggling between alternating Government Exhibits." (Gov't Opp. at 7.) The Government further represents that the compilation "does not alter the underlying video surveillance in any way," and that it has previously produced the unedited footage in discovery, thereby affording both parties full access to the material summarized. (*Id.* at 6–7.) While Defendant argues that the video compilation contains implied argument, summary exhibits are not rendered inadmissible merely because they present evidence in a manner that supports one party's theory of the case. A Rule 1006 summary need not include all evidence in the record, "so long as the witness does not represent to the jury that he is summarizing all the evidence in the case." *Linde v. Arab Bank, PLC*,

922 F. Supp. 2d 316, 333 (E.D.N.Y. 2013); *see also United States v. Ho*, 984 F.3d 191, 209–10 (2d Cir. 2020) (rejecting argument that Rule 1006 bars summary charts "created for the purpose of generating a narrative supporting the prosecution's theory of the case").

Finally, Rule 403 does not preclude admission of the video compilation. The purported contents—depicting "two individuals walking in the vicinity of the Residence before and after the robbery" and "carrying items that meet the description of some of the [stolen items]"—are highly probative of the charged conduct, and any risk of unfair prejudice does not substantially outweigh that probative value. (Gov't Opp. at 9.)

Accordingly, the Court finds that the video compilation is admissible under Federal Rules of Evidence 1006 and 403 and DENIES Defendant's motion to exclude it.

### D.    Request for Order Instructing the Production of Unredacted Documents

Defendant moves for an order directing the Government to produce unredacted versions of witness statements, law enforcement reports, and other documents the Government intends to introduce at trial. (Def. Mot. at 14–15.) Defendant contends that the Government "produced heavily redacted material during pretrial discovery," thereby "restrict[ing] his ability to be well prepared for trial." *Id.* The Government responds that its redactions are limited to "the names, dates of birth, addresses, phone numbers, and other personal identifying information of victims and witnesses; addresses and dates of birth belonging to third parties; the street address and date of birth of a co-defendant; and officer serial numbers and email addresses." (Gov't Opp. at 9–10.) The Government further asserts that, along with the redacted materials, it produced "unredacted versions, or versions with more limited redactions, to ensure that all Rule 16 information was provided." (*Id.* at 10.) In light of these representations, the Court cannot, at this stage, determine which redacted materials, if any, warrant the production of unredacted versions. Accordingly, the

Court RESERVES DECISION on Defendant's request for an order directing the Government to produce unredacted documents.

## II.    The Government's Motions *In Limine*

### A.    *Admit Statements by the Defendant and His Co-conspirator, As Well As Those by the Victims, Including Recording of 911 Call*

The Government seeks to introduce for their truth: (1) statements by Defendant and his co-defendant as admissions and co-conspirator statements under Rules 801(d)(2)(A) and 801(d)(2)(E), respectively; and (2) statements by Victim-1 and Victim-2, including a recording of a 911 call, under Rules 803(1) and 803(2).

The Federal Rules of Evidence define hearsay as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is admissible only if it falls within an enumerated exception, Fed. R. Evid. 802, such as Rules 801(d)(2)(A), 801(d)(2)(E), 803(1), and 803(2). The Court first addresses Rules 801(d)(2)(A) and 801(d)(2)(E), and then turns to Rules 803(1) and 803(2).

A criminal defendant's out-of-court statements are admissible when offered against that defendant pursuant to Rule 801(d)(2)(A), which exempts from the hearsay rule statements "offered against an opposing party and…made by the party in an individual…capacity." Fed. R. Evid. 801(d)(2)(A). *United States v. Elmaani*, No. 20 CR. 661 (CM), 2023 WL 2770742, at *6 (S.D.N.Y. Apr. 4, 2023) ("[s]tatements made by a defendant, when offered by the Government, are generally admissible regardless of whether such statements were against his interest when made," but "a defendant does not have a parallel ability to offer his own statement into evidence.") (internal quotations omitted). Rule 801(d)(2)(E) further provides that a statement is not hearsay if the statement is "offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement under Rule

801(d)(2)(E), a district court must find by a preponderance of the evidence that: (1) a conspiracy that included the defendant and the declarant existed; and (2) the statement was made during and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). While a district court making these preliminary factual determinations pursuant to Federal Rule of Evidence 104(a) may consider the hearsay statements themselves as evidence of the existence of a conspiracy, *id.* at 177-78, such statements are "presumptively unreliable" and "there must be some independent corroborating evidence of the defendant's participation in the conspiracy" for such statements to be admissible. *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996). Lastly, to be "in furtherance" of a conspiracy, the statement must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy. *See* Gov't Mot. at 12 (collecting cases).

At trial, the Government intends to offer into evidence statements made both by Defendant and his co-defendant, specifically text message communications between the two identifying the target Residence, planning the timing and execution of the robbery, and discussing how to sell the stolen marijuana. (Gov't Mot. at 13-14.) Statements about the robbery after the fact, including about dividing up the proceeds, can be in furtherance of the conspiracy. *See United States v. Rodriguez*, 370 F. App'x 135, 136 (2d Cir. 2010) ("[T]he statements made to [a co-conspirator] of which he testified were made in furtherance of dividing the proceeds from the conspiratorial crime, and were therefore made in furtherance of the conspiracy.") (citing *United States v. Maldonado–Rivera,* 922 F.2d 934, 958–59 (2d Cir.1990)). The Court disagrees with Defendant's contention that the communications between Defendant and his co-defendant "do not contain clear enough intent to conspire" and instead "reflect merely speculative dialogue about potential criminal acts." (Def. Opp. at 3.) The Government does not have to show "a continuous and logical sequence

linking the messages to actual robbery actions," as suggested by Defendant; rather, it must establish by a preponderance of the evidence that a conspiracy existed. (*Id.*) In light of the corroborating evidence the Government intends to introduce, including video surveillance footage, cellsite location data for Defendant's and his co-defendant's cellphones, and physical evidence recovered from the co-defendant's residence, the Court preliminarily finds by a preponderance of the evidence that a conspiracy existed and that the statements were made during and in furtherance of that conspiracy. Accordingly, Defendant's own statements are admissible under Rule 801(d)(2)(A) and his co-defendant's statements are admissible as co-conspirator statements under Rule 801(d)(2)(E).

Federal Rule of Evidence 803(1) also exempts from the hearsay rule "present sense impression[s]," "statement[s] describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v. Jones,* 299 F.3d 103, 112 (2d Cir. 2002) (citing *United States v. Brewer,* 36 F.3d 266, 272 (2d Cir.1994)). Relatedly, Federal Rule of Evidence 803(2) creates a hearsay exception for an "excited utterance," "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(1). "Unlike present sense impressions, an excited utterance need not be contemporaneous with the startling event to be admissible under hearsay exception; rather, the length of time between the event and the utterance is only one factor to be taken into account." *Jones,* 299 F.3d at 112; *see also United States v. Ibanez*, 328 F. App'x 673, 675 (2d Cir. 2009) ("For statements to qualify as present sense impressions, precise contemporaneity is not required.").

The Government seeks admission, through witness testimony, of statements by both victims, including "statements by the victims in response to demands from the assailants"—for example, Victim-1's statement that he only had $1,000 in his pocket and Victim-2's statement that his phone was tracked by immigration authorities—as well as statements made by the victims to one another as they freed themselves and called 911, and the recording of that 911 call itself. (Gov't Mot. at 16.) These statements by the victims were made during, or immediately after, the startling event of a gunpoint robbery and, therefore, are plainly admissible under both Rules 803(1) and 803(2). Courts also routinely admit recordings of 911 calls pursuant to both Rules 803(1) and 803(2). *See, e.g., United States v. Steele*, 216 F. Supp. 3d 317, 321-22 (S.D.N.Y. 2016) ("A statement made during a 911 call within minutes of the caller's observation of the reported events is sufficiently contemporaneous to qualify as a present sense impression."); *United States v. Mejia–Valez*, 855 F. Supp. 607, 614 (E.D.N.Y. 1994) (admitting 911 call made 16 minutes after the first call because call was "made without any motivation for fabrication" and "was consistent with [the declarant's] first call and with the other testimony in the case"). Here, the 911 recording captures Victim-1 reporting a robbery that had occurred "like five minutes ago," describing the presence of weapons and that both victims had been tied up, and listing stolen items. (Gov't Mot. at 16-17.) The call is also non-testimonial under the Confrontation Clause because the "primary purpose" of the dispatcher's questions was to gather the necessary information to dispatch police to the Residence, not to "establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 813–14 (2006) ("[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency.")

Accordingly, the recording of the 911 call is not hearsay and admissible under both Rules 803(1) and 803(2).

For the foregoing reasons, the Court GRANTS the Government's motion *in limine* to admit statements by Defendant and his co-defendant and statements by the victims, including the recording of a 911 call, pursuant to Rules 801(d)(2)(A), 801(d)(2)(E), 803(1) and 803(2).

### B.    Preclude Cross-Examination of Victim-2 on His Criminal Conviction

The Government requests to preclude cross-examination of Victim-2 on his criminal conviction. Rules 608 and 609 of the Federal Rules of Evidence limit the circumstances under which specific acts of a witness may be introduced at trial, whether through extrinsic evidence or questioning of the witness. Under Rule 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," except for criminal convictions admissible under Rule 609. Fed. R. Evid 608(b). However, on cross-examination, the Court "may… allow [such instances] to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness." *Id.* Any such cross-examination also must satisfy Rule 403 – that is, specific instances of a witness's conduct may be inquired into only if their probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403. Rule 609, in turn, governs the impeachment of a witness by evidence of a criminal conviction. For convictions within Rule 609's 10-year timeframe, two categories are admissible: (1) evidence of a witness's prior felony conviction, subject to Rule 403 balancing; and (2) evidence of any conviction for crimes of dishonesty or false statements, regardless of whether they are felonies. Fed. R. Evid. 609(a)(1)(A), 609(a)(2).

Victim-2 was convicted in New York in 2022 of attempted criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(3), for which he received a five-year probationary sentence. (Gov't Mot. at 19.) As an initial matter, the Court must first determine whether this conviction qualifies as a crime involving a dishonest act or false statement under Rule 609(a)(2), or whether it falls within Rule 609(a)(1)(A) and is subject to Rule 403 balancing. Having reviewed the elements for attempted criminal possession of a weapon in the second degree, the Court concludes that this crime does not require proof a dishonest act or false statement. *See* N.Y. Penal Law § 265.03(03). As numerous courts have held, weapons possession offenses are not crimes of dishonesty or false statement within the meaning of Rule 609(a)(2). *See Brown v. Cornell*, No. 17-CV-1036 (MAD/ATB), 2021 WL 2711511, at *4 (N.D.N.Y. July 1, 2021) ("Violent crimes such as murder, conspiracy, robbery, and weapons possession are generally not particularly probative as to honesty or veracity.") (citing *United States v. Estrada*, 430 F.3d 606, 617–18 (2d Cir. 2005)); *Espinosa v. McCabe*, No. 9:10-CV-497 (MAD/CFH), 2014 WL 988832, at *4 (N.D.N.Y. Mar. 12, 2014) ("Convictions for... weapons possession are generally not particularly probative as to honesty or veracity.").

Because Victim-2's conviction is not presumptively admissible under Rule 609(a)(2), it is subject to Rule 403 balancing pursuant to Rule 609(a)(1)(A). In applying this balancing test, courts typically consider: "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Cornell*, 2021 WL 2711511, at *4 (internal quotations omitted). Victim-2's conviction has minimal, if any, probative value and carries a significant risk of unfair prejudice. The offense is entirely unrelated to the charged offenses in this case, does not bear on Victim-2's truthfulness, and could improperly influence the jury's assessment of his

testimony. *See e.g., United States v. Antoine*, No. 23-CR-305-2 (NSR), 2024 WL 4557435, at *5 (S.D.N.Y. Oct. 23, 2024) (precluding cross-examination regarding cooperating witness's felony conviction for attempted assault in the second degree as having "marginal relevance to the current case" and "not bear[ing] on [the witness's] veracity.") Further, it is unclear to the Court how this conviction is probative of "bias" and "incentive to testify falsely for the government," like Defendant argues, when Victim-2 was charged, prosecuted, and sentenced for his crime. (Def. Opp. at 5; Gov't Reply at 6.) Hence, evidence of Victim-2's conviction is also inadmissible under Rule 609(a)(1)(A).

Accordingly, the Court GRANTS the Government's motion *in limine* to preclude cross-examination of Victim-2 on his criminal conviction.

### C.       *Permit the Government to Use a Summary Witness*

The Government moves to use a summary witness. As discussed above, the Court is allowing the Government to introduce as trial evidence a compilation of video surveillance footage under Rule 1006. The same reasoning the Court applied to that motion *in limine* guides the Court here. In addition to the video surveillance footage, the Government expects to introduce "hundreds of pages worth of toll records for two phone numbers; dozens of pages of cellsite location records for the phone numbers; messages from two cellphones; [and] records from several businesses, such as E-ZPass records." (Gov't Mot. at 20.) The records in this case are voluminous and the use of a summary witness would be appropriate. The Government has stated that "it does not intend to offer a summary witness as an expert" and so Defendant's concerns on that point are moot. (Gov't Reply at 2; Def. Opp. at 6-7.)

The Government, however, should be mindful of the boundaries of their summary witness's testimony, which should do no more than analyze facts already introduced into evidence.

*See United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004) ("a summary witness for the Government" cannot tell the jury "what [is] in the evidence" and "what inferences to draw from it" under Federal Rule of Evidence 701); *see also* Fed. R. Evid. 701 advisory committee's note to 2000 amendment ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing"). Furthermore, in this Circuit it is improper for the Government "to open its case with an overview witness who summarizes evidence that has not yet been presented to the jury." *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2025) (quoting 6 Weinstein's Federal Evidence § 1006.04[3]). "[T]his practice is particularly problematic in criminal cases because it allows 'the government to paint a picture of guilt before the [supporting] evidence has been introduced.'" *Id.* (quoting *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003)). "The [summary] witness should be advised ahead of any testimony that [they] must avoid adding any gloss of expertise when [they] perform[] this function" and that "[their] role is to testify as a summary witness on behalf of the [Government], not to lend an aura of credibility to any lay opinion regarding Defendant's culpability. *United States v. Barnwell,* No. 15 CR. 620 (NSR), 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017).

Accordingly, the Court GRANTS the Government's motion *in limine* to use a summary witness in accordance with the above limitations. The Court orders the Government to disclose all summary charts it intends to introduce as well as a summary of the witness's expected summary testimony in advance of trial so as to provide Defendant with a meaningful opportunity to prepare for cross-examination.

    D.     *Allow Certain Self-Authenticating Evidence*

The Government requests to introduce certain business records and phone extractions,

under Rules 803(6), 902(11), 902(13), and 902(14), through custodian of records affidavits and appropriate records of certification.

While hearsay evidence is generally not admissible, Rule 803(6) makes a business-records exception for

> [a] record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Rule 902(11), referred to in Rule 803(6)(D), provides, in relevant part, that "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court," is "self-authenticating," meaning that it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902(11). Rules 803(6) and 902(11) thus work in tandem to create a framework for the authentication and admission of business records "without the expense and inconvenience of producing time-consuming foundation witnesses." *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (quoting Fed. R. Evid. 803 Advisory Committee Note (2000)).

At trial, the Government intends to introduce certain business records, including: cellphone records from Verizon, AT&T, and T-Mobile; email account records from Google and Microsoft for accounts used by Defendant and his co-defendant; E-ZPass records from the New York State

Thruway Authority; account records from Whatsapp; and account records from Instagram. (Gov't Mot. at 23.)

"The principal precondition to admission of documents as business records pursuant to [Rule] 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *United States v. Conde*, 134 F.4th 82, 87–88 (2d Cir. 2025) (quoting *Saks International, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987). Defendant has not shown that any of the records lack such indicia of reliability or that the method or circumstances of their preparation render them untrustworthy. Nor has Defendant shown that the records were not created and maintained in the ordinary course of business by the respective providers, at or near the time of the relevant transactions. Accordingly, because the records satisfy the foundational requirements of Rule 803(6) and are properly certified under Rule 902(11) by custodian of records affidavits already produced in discovery, the records are admissible as self-authenticating business records and may be introduced without live testimony from the custodians.

The Government also moves to authenticate evidence extracted from "lawfully seized and reviewed phones used by the Defendant and his co-conspirator" ("the Seized Phones") through records of certification pursuant to Rules 902(13) and 902(14). (Gov't Mot. at 24.) An exhibit's proponent generally must "authenticate" the exhibit by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). However, "a record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 901(11) or (12)" is self-authenticating. Fed. R. Evid. 902(13). Moreover, "data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule

902(11) or (12)" is also self-authenticating. Fed. R. Evid. 902(14). Under Rule 902(11), the proponent must give "reasonable written notice" and "make the record and certification available for inspection" so that the adverse party "has a fair opportunity to challenge them." Fed. R. Evid. 902(11).

As set forth in the FBI Supervisory Special Agent's Affidavit, a forensic extraction was performed of the Seized Phones. (Gov't Reply, Ex. B at 2.) "A forensic extraction of a device means creating a copy of the electronic data from the device…in a manner that prevents the data from being altered or changed in any way." *Id.* The Affidavit avers that the Special Agent used specific software and hardware tools for performing examinations on electronic devices "to create a forensic copy of the digital data from each [] Seized Phone" and to "verif[y] the accuracy of each extraction." *Id.* In other words, the forensic extraction of the Seized Phones ended with a "true and accurate" copy of the data on the Seized Phones. *Id.* The Affidavit also avers that the affiant is a "qualified person" and that it was made in accordance with 28 U.S.C. § 1746 and under penalty of perjury, thus conforming to the certification requirements in Rule 902(11). Finally, the notice requirements of Rule 902(11) are similarly met by the Government's filing this motion *in limine*. *See United States v. Carter,* No. 21 CR681-01-02-02=NSR, 2024 WL 268248, at *3 (S.D.N.Y. Jan. 24, 2024) (granting Government's motion to authenticate the decrypted accounts obtained from certain iCloud accounts because the affidavit did "not raise any concerns with respect to the Confrontation Clause"). Accordingly, the Court finds that the requirements of Rules 902(13) and (14) have been met for the extractions of the Seized Phones.

For the foregoing reasons, the Court GRANTS the Government's request to introduce certain business records and phone extractions from the Seized Phones as self-authenticating

through custodian of records affidavits and records of certification, pursuant to Rules 803(6), 902(11), 902(13), and 902(14).

E.    *Exclude Evidence of Defendant's Personal Circumstances, Good Conduct, and Potential Punishment*

The Government moves to exclude evidence of Defendant's personal circumstances, good conduct, and potential punishment. Defendant does not oppose the Government's motion. Courts generally exclude evidence of a defendant's personal and family circumstances when they are "irrelevant to any issue of consequence and therefore inadmissible." *United States v. Rossy*, No. 22-CR-550-02 (NSR), 2023 WL 8237055, at *1 (S.D.N.Y. Nov. 28, 2023). Here, evidence or argument concerning the Defendant's good conduct, family background, health, age, domestic situation, children, or other similar factors have no relation to whether he is guilty of the criminal allegations levied against him and may improperly elicit the jury's sympathy or bias. Moreover, "[i]t is axiomatic that 'juries are not to consider the consequences of their verdicts and must undertake their duties as triers of fact without regard for the sentences that may be imposed by the Court following a determination of guilt." *United States v. Forney*, No. 24-CR-146 (KAM), 2025 WL 2208298, at *18 (E.D.N.Y. Aug. 4, 2025) (quoting *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor between the judge as sentencer and the jury as trier of fact.")).

Accordingly, the Court GRANTS Defendant's motion to exclude evidence of Defendant's personal circumstances, good conduct, and potential punishment.

## CONCLUSION

For the foregoing reasons, the Court RESERVES DECISION on Defendant's motion to preclude all law enforcement lay opinion testimony, including Defendant's request to preclude law

enforcement lay opinion testimony about video surveillance in evidence; DENIES AS MOOT Defendant's motion to exclude as trial evidence the Government's Cellular Analysis summary chart and directs the Government to remove the FBI shields and the language identifying the chart as property of the FBI before offering it as evidence at trial; DENIES Defendant's motion to exclude Defendant's video compilation of surveillance footage; and RESERVES DECISION on Defendant's request for a Court Order directing the Government to produce unredacted versions of certain documents.

The Court GRANTS the Government's request to admit statements by Defendant and his co-defendant, as well as statements by the victims, including a recording of a 911 call; GRANTS the Government's request to preclude cross-examination of Victim-2 on his criminal conviction; GRANTS the Government's request to use a summary witness, subject to the aforementioned limitations, and directs the Government to disclose all summary charts it intends to introduce as well as a summary of the witness's expected summary testimony in advance of trial; GRANTS the Government's request to admit certain self-authenticating evidence; and GRANTS the Government's request to exclude evidence of Defendant's personal circumstances, good conduct, and potential punishment.

The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 76 and 77.

Date: October 21, 2025
White Plains, New York

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE